IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANIL LAXMAN,<br><br>    Plaintiff,<br><br>vs.<br><br>STATE OF UTAH and UNIVERSITY OF UTAH,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:23-CV-00274-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants' Partial Motion to Dismiss [ECF No. 23]. On March 25, 2024, the court held a hearing on the motion. At the hearing, Kinsi Gene Suttner Bollinger, I represented Anil Laxman ("Plaintiff"), and Katherine B. Bushman represented the University of Utah and the State of Utah (collectively, "Defendants"). The court took the matter under advisement. Now being fully informed, the court issues the following Memorandum and Decision.

BACKGROUND

The University of Utah ("University") hired Plaintiff as the Director of the University's Metabolic Phenotyping Core Facility ("MPC") on or about December 1, 2016. Sec. Amend. Compl. ¶ 14. Plaintiff alleges that, in an effort to induce him to join the University, the University promised him the resources normally attendant to the MPC Director position he was being offered and the ability to run the MPC independently. *Id*. at ¶ 18. In reliance on these promises, Plaintiff left his higher paying job in New York and moved across the country to Salt

Lake City. *Id*. at ¶19. He alleges that, upon arriving at the University, he was treated in a disparate manner from his non-Indian peers and was "met with broken promises." *Id*. at ¶ 21.

In response to this treatment, Plaintiff alleges that he expressed concerns about discrimination based on his race or nationality to his supervisor, Dr. Phillips in May of 2019. *Id*. at ¶ 38. Dr. Phillips was not receptive to these concerns, and threatened to fire Plaintiff if he filed any Equal Employment Opportunity (EEOC) complaints. *Id*. at ¶ 38. On or around July 1, 2021, Plaintiff complained to the NIH about the discrimination he was experiencing at the University, and Dr. Phillips issued him a termination letter the next day, July 2, 2021. *Id*. at ¶¶ 56–57. Plaintiff then submitted a complaint to the University's Office of Equal Opportunity, the University's Director of Human Resources, and the University's Employee Relations Specialist reporting discrimination, legal violations, and retaliation. *Id*. at ¶¶ 5–6. Plaintiff's last day of employment was on July 17, 2021. *Id*. at ¶ 11. Plaintiff filed a charge of discrimination with the EEOC on November 23, 2021, and received a right to sue letter from the EEOC on January 30, 2023. *Id*. at ¶¶ 9–10.

Plaintiff filed this lawsuit on April 29, 2023 [ECF No. 1]. Plaintiff filed an amended complaint on July 21, 2023 [ECF No. 4] and a Second Amended Complaint on November 7, 2023 [ECF No. 21]. Defendants then filed a Partial Motion to Dismiss [ECF No. 23]. In this motion, they argue that Plaintiff's UPPEA Claim and Estoppel Claim should be dismissed, and that the State of Utah is not a proper party to this case.

## DISCUSSION

### I.  UPPEA Claim

The UPPEA states:

"(ii) an employee of a state institution of higher education

> (A) may bring a civil action described in Subsection (1)(a) within 180 days after the day on which the employee has exhausted administrative remedies; and
>
> (B) may not bring a civil action described in Subsection (1)(a) until the employee has exhausted administrative remedies."

§ 67-21-4(1)(b)(ii)(A)–(B). It is clear that this subsection of the statute applies to Plaintiff. Plaintiff was an employee of the University of Utah, which is a "state institution of higher education." His claim is against the University of Utah and the alleged discrimination he experienced while working there. Although this subsection does not explicitly use the word "retaliatory," the purpose of the UPPEA is to provide employees with relief when their employers engage in retaliatory actions. Accordingly, subsection (1)(b) will govern Plaintiff's UPPEA claim.

Under this subsection, a plaintiff is required to exhaust all administrative remedies before bringing a civil action. *Id*. In 2021, when Plaintiff filed a complaint, the policy that the University adopted and that was in effect at the time stated: "A complaint alleging a violation of the UPPEA . . . must be filed with the Director of Employee Relations." University of Utah, Policy 5-211 (2019), http://regulations.utah.edu/human-resources/revisions_5/5-211.r0.pdf. The policy did not provide any contact information for the "Director of Employee Relations," identify that individual by name, or specify how a complaint should be filed. The University website did have an email posted for the Human Resources Hotline and indicated that complaints about adverse action could be sent there.

Here, Plaintiff exhausted all administrative remedies. On July 11, 2021, Plaintiff sent an email to the Human Resources hotline at the University, an email which the University had posted on its website for complaints about adverse actions. In this email, Plaintiff described the

abusive actions he was enduring during and had endured during his four-and-a-half years of employment at the University. In response to this initial email, Danielle Maroney, the Employee Relations Specialist, thanked Plaintiff for his email and stated: "I would like to take this opportunity to ensure that you have additional resources as well, given the information you shared in your initial email." [ECF 30-10] These additional resources included the Office of Equal Opportunity, the Employee Assistance Program, the Business Ethics and Compliance Hotline, University Campus Police, and the Behavioral Intervention Team. *Id*. This email also contained information about Plaintiff's options for appeals and an offer to schedule a meeting. Plaintiff and Ms. Maroney continued to exchange emails. In one email, Plaintiff stated that he wanted to submit an appeal. Ms. Mahoney responded to Plaintiff with information regarding the appeals process and the deadlines involved.

      These facts demonstrate that Plaintiff exhausted his administrative remedies. As mentioned above, the University Policy required that he contact the Director of Employee Relations. The University website that dealt with such complaints did not provide Plaintiff with the direct contact information of this individual. When Ms. Mahoney responded to Plaintiff, her signature indicated that she was the Employee Relations Specialist and she indicated that she could help him with this process. Thus, Plaintiff contacted the correct department and person to proceed with his complaints.

      Defendants argue that Plaintiff did not exhaust his administrative remedies because he did not contact any of the other departments that Ms. Mahoney referenced in her email. However, Plaintiff did eventually file a charge with the Equal Employment Opportunity Commission ("EEOC"). Even so, Ms. Mahoney's email did not indicate that contacting these

4

other departments was necessary. The University policy required Plaintiff to reach out to Employee Relations, and this is what he did. Thus, this argument fails.

Defendants also argue that even if Plaintiff exhausted his administrative remedies, his claim is barred by the statute of limitations. However, the UPPEA states that an employee "may bring a civil action described in Subsection (1)(a) within 180 days after the day on which the employee has exhausted administrative remedies" and "may not bring a civil action . . . until the employee has exhausted administrative remedies." § 67-21-4(1)(b)(ii)(A)–(B). Here, Plaintiff was terminated on July 17, 2021. On November 23, 2021, he filed a charge with the EEOC. The EEOC was one of the additional resources that Ms. Maroney mentioned in her email to Plaintiff. On January 30, 2023, the EEOC issued a Notice of Right to Sue Letter. The date this letter was issued is the date that Plaintiff exhausted his administrative remedies. Until this point, Plaintiff had been complying with the administrative remedies and procedures that the University had in place. The Right to Sue Letter officially indicated that he had exhausted his administrative remedies. On July 21, 2023, 172 days after exhausting his administrative remedies, Plaintiff filed his amended complaint alleging whistleblower retaliation.

Thus, for these reasons, Plaintiff's UPPEA claim is proper.

## II. Estoppel Claim

The general rule is that a party cannot assert an estoppel claim against a governmental entity. *Prows v. State*, 822 P.2d 764, 769 (Utah 1991). Courts must be careful in "applying equitable estoppel against the State when it is functioning in a governmental, as opposed to a proprietary, capacity." *Eldredge v. Utah State Retirement Bd.*, 795 P.3d 671, 676–77 (Utah 1990). However, Utah does allow estoppel claims against governmental entities "when it is plainly apparent that [barring the estoppel claim] would result in injustice, and there would be no substantial adverse

5

effect on public policy." *Prows v. State*, 822 P.2d 764, 769 (Utah 1991). The court must assess whether "the facts may be found with such certainty, and the injustice to be suffered is of sufficient gravity, to invoke the exception." *Id*.

Here, the University promised Plaintiff that that it would provide him with opportunities for professional growth, provide him with resources normally attendant to the MPC Director position, and allow him to run the MPC independently. Plaintiff relied on these promises, and in doing so, he left his higher paying job in New York City and relocated to Salt Lake. Plaintiff alleges that after relying on these promises, the University, based on racial discrimination, removed his support staff, made him inferior to his lateral colleagues, and allowed his colleagues to represent that they oversaw the MPC and make decisions for the MPC despite the fact that Plaintiff was promised he would run the MPC independently. Furthermore, Plaintiff's estoppel claim does not adversely affect public policy, as addressing racial discrimination actually benefits public policy. Accordingly, Plaintiff's estoppel claim is proper.

### III.     State of Utah as a Party

Plaintiff has stated "no allegations that the State played any role in the alleged wrongful conduct." *See Davis v. Utah*, 2019 WL 2929770, at *2 (D. Utah July 8, 2019). An entity that is not a party to a contract cannot be held liable for its breach or bound by its terms. *See id*.

Furthermore, the State of Utah is not an employer of Plaintiff under common law theory. *See e.g. Mallory v. Brigham Young Univ.*, 332 P.3d 922, 928–29 (Utah 2014). Moreover, the Tenth Circuit has noted the reluctance of courts in "finding that two nominally separate state or municipal governmental entities are in fact a single employer, since such a conclusion effectively negates what we assume was a state's conscious choice to create distinct organizations." *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1323 n.3 (10th Cir. 2004).

All of Plaintiff's allegations are directed at the University of Utah, not the State of Utah. Accordingly, dismissal of the State of Utah is appropriate.

## CONCLUSION

Defendants' Partial Motion to Dismiss [ECF No. 23] is DENIED IN PART and GRANTED IN PART. Plaintiff's UPPEA and Promissory Estoppel claims are proper. However, the State of Utah is not a proper party, and is dismissed from the case.

DATED this 7th day of May 2024.

BY THE COURT:

DALE A. KIMBALL
United States District Judge